Amy Thiry, Counsel for Appellant Stephen Scarpa Joe A. Abramson, Counsel for Appellee Alexander Kendall Administrator of the Estate of Bijan Majlesi Okay, let me ask Ms. Thiry, you're the appellant here, so would you like to reserve some time? Yes, Your Honor. Three minutes. Three minutes. Okay, I'll try to let you know we're right when you're ahead in three minutes, okay? Thank you. Thank you. Okay, go ahead, proceed. Thank you. Good morning, my name is Amy Thiry, representing Mr. Scarpa, the appellant. These two appeals are from two separate orders related to claim objections on two proofs of claim in debtor Mountain Air's bankruptcy case, claim number two and claim number four. Claim number two pertains to respondent Kendall's assertion that he's owed attorney's fees related to a litigation that took place in Marin County, California involving debtor Mountain Air. In that suit, Mountain Air sued three defendants, Sundowner Towers, Bijan Majlesi, and Glenn Larson. Mr. Kendall is the administrator of the probate estate of Bijan Majlesi. That case commenced in 2008. It has a long and complex history. Mr. Kendall stands in the shoes of only one of those three defendants who won on two affirmative defenses and therefore became the prevailing parties. Whether attorney's fees were awardable was an issue that went up to the California Supreme Court and back. The claim amount was never liquidated by the trial court because debtor Mountain Air had filed its bankruptcy case in between. So the proof of claim was filed, and Mr. Scarpa objected, arguing that there should be an apportionment of the fees based upon the California Court's rulings because there were two separate affirmative defenses, one of illegality and one of novation. Can I stop you right away and ask you, what was the direction of the California Appellate Court about allocating fees? You're right, Your Honor. The direction there was in footnote 15. The discretion was left to the trial court. To allocate it all. That's true. And it really turns on this issue of the option agreement was not the agreement, the operative agreement that was sued on in that case. It was the repurchase agreement, and the option agreement was only raised as part of the affirmative defense of novation. So with respect to the bankruptcy court's decision on this claim number two, the court sustained the objection in part and overruled it in part, and allowed the claim in the amount of $906,000, and only discounted the amount by 10%. And in allowing the claim, my client's position is the bankruptcy court abused its discretion because it was clear that the court had not familiarized itself with the objection, had not made specific findings of fact related to the objection, and that its decision was not based on a familiarity of the record and an understanding of the claim. So was the position of the bankruptcy court with regard to the resolution of that question supported by evidence produced by Mr. Magillese and arguments that were presented by Mr. Kendall? I would say, your honor, Mr. to the extent Mr. Abramson was testifying that he believed that 10% was appropriate because that's what was included in the claim objection, or I'm sorry, the claim itself, yes. To that extent, yes. He also supported that with not just his own argument. He pointed out what he believed would be the nuances of how the court would reach that decision, what facts it would rely upon, why it would favor this versus the argument that was made by Mr. Scarpa, and the court resolved it to go with what Mr. Abramson supports, his position, right? That's fair. So if we are reviewing it for abuse of discretion, that he applied a correct standard and he had facts in the record that would support that decision. Your honor, my position is that the court didn't spend the time to examine the arguments in the briefs, and that was evident from a lot of the court's comments on the record. The court expressed regret for not having agreed to allow the stay to be terminated so the case could go back to the marine court. At one time, he expressed a belief that he was sitting as an appellate court and that the marine court had actually liquidated the fees. There was a complete confusion, and yes, you're correct. At the end, he did decide to agree with Mr. Abramson's position that a 10% award was appropriate, but when you look at the case as a whole, and the litigation that took place in the marine county court, it went on over a long period of time, and the main case itself was based on whether or not the repurchase agreement was enforceable through specific performance, and that agreement was determined to be illegal, and therefore, and then a separate affirmative defense was this issue of novation raised by the subsequently executed options agreement. As a whole, your honor, a 50% apportionment would have been a more reasonable approach to addressing the apportionment issue. Judge Brown, were you going to ask a question? I was going to ask, yes. I was going to ask, did you give Judge Beasley that option of a 50% reduction, and then a rationale or evidence to support why 50% was the right number rather than 10%? Your honor, I believe at the end of the first day of hearing on March 6th, I did make that argument, and I pointed to specific issues in the record. For example, four days of the 13 day bench trial related to an issue about an attorney-client privilege that was unrelated, frankly, to either defense, and I also pointed out there was a Fifth Amendment issue that was unrelated to the novation defense, so I did point to specific billing entries and parts of the record that addressed that there were matters heard by the trial court that had no relationship to the novation defense. So, yes, I did make that argument at the end of the first day of hearing, your honor. Flafferty, did you want to ask something? I have the same question, but I'll maybe take it a step further. The whole burden of proof-issue and a proof-of-claim scenario is maybe a little bit, I don't know if you do bankruptcy law all the time, but it's a little bit different from what you might experience in other kinds of hearings. What seems to be the case here is, one, the California appellate courts are not dictating to the ultimate trier of fact here whether there is a need to allocate at all. It's up to the trier of fact, right? Number two, this trier of fact has given an enormous amount of discretion even though he didn't try the case, which is a little anomalous, but I do think that the cases say that this trier of fact has a fairly broad discretion. A claim is filed and it is deemed allowed, unless and until there is an objection. The focus of an objection has to be to create enough doubt about the claim to shift the burden. The concern that I had, and I think I also heard from Judge Brand, is when you come in and say, well, here's a bunch of things we don't think really have anything to do with this defense, which the judge is not bound to use to reduce the claim. He's not required to do that. We'd like you to take it down by 75%. I have a hard time seeing how that by itself would have shifted the burden back to the claimant, as opposed to the burden never really left you. If the claimant decides at that point, 10% is a reasonable reduction and the judge agrees with it, that's fine. That's a long question, but what I'm trying to figure out here is how do you think you managed to shift the burden back to the claimant through alleging that some of this stuff really seemed to have nothing to do with novation, and 75% seems like the right number to cut? Fair Your Honor, it was complex, and I attempted to point the court to specific entries in the billing records that would show that they were not related, and I did take the position in the briefs, as you saw, that allocation or apportionment was required, and I appreciate the court's point in really reviewing this record and understanding the California Appellate Court's decision at footnote. And I think Judge Beasley did expressly disagree with you about the attorney-client issue, right? He based that on Mr. Kendall's argument. He made a determination that those fees were properly included, correct? He did. At the end of the day, aren't you really just suggesting to us that you think this was error because we should substitute our and we should find that your arguments are more compelling than his arguments were and therefore we should reverse his decision? Your Honor, I don't think that's really my position. I just thought that there was sufficient issue or questions raised on the record based on Judge Beasley's comments that the record wasn't thoroughly reviewed. So do you think we should send it back to Judge Beasley to do it again? Perhaps then we would have perhaps a more thorough review. One would hope. Because those are our two choices, what Judge Gant said and what I said. From your perspective. Yes. Yes, and that's exactly. I'm asking that it be sent back to Judge Beasley, not that there be a substitution. And that perhaps at this point after an appeal, he would spend the time to review the record and make a more informed decision. But if I may, there's two issues. There's two appeals that we're arguing now in the 15 minutes, so I'll shift to the other. You're right at your five minutes if you'd like to do that during your rebuttal time. If you want to use the time now, it's totally up to you. Oh, I'm at five minutes and I reserved three. I take it back. You're right. Thank you. Thank you. So the second claim is claim number four. And that is the claim that my client filed based upon an assignment that he received prior to the California Supreme Court's decision of Glenn Larson and Sundowner Towers rights to any award in the attorney's fees or award of attorney's fees. And we filed the proof of claim to preserve Mr. Scarpa's rights in the event ultimately what this is about, and this is in the record, that Mr. Kendall seeks to hold my client liable on a theory of alter ego related to these attorney's fees. And my client wanted to preserve a right of set off related to that because he is standing in the shoes of two of the prevailing parties, Sundowner and Glenn Larson. And when the judge heard the arguments, the judge decided that my client couldn't seek an assignment from Mr. or the assignment was not enforceable with respect to Mr. Larson and Sundowner because they had not in fact paid. And the issue on that standard is not the correct legal standard. In California under the case law cited in the brief, the standard is whether or not the fees were incurred, not whether they were paid. Doesn't this issue come up in the circumstance where there is a dispute between the prevailing party and the losing party? It doesn't usually come up in the dispute between how to allocate awards between two prevailing parties. I feel like that's a different question. Sure, the issue of incurred versus reimbursed the context is the losing party says you don't get to recover because you didn't pay those fees somebody else paid them so I don't have to make you whole. And the California courts are very clear saying incurred is the issue, not reimbursement in that context. But that's not what we're talking about here. We're talking about the context where there's a dispute between two non-debtors in bankruptcy court about how you allocate the prevailing party's attorney fees. Correct, that is the dispute. Why is incurred the standard rather than reimbursed in that  $600,000 of attorney's fees? Shouldn't they get reimbursed for that? But Judge Beasley's order doesn't permit that. I mean, if that issue had been reserved, my client then would be able to, Mr. Modulesi could assert that Mr. Scarpa's assignment is invalid for that reason. But that's not how Judge Beasley ruled. May I, I'm sorry, may I reserve the rest of my time? Good morning, Your Honors. My name is Joe Abramson and I'm the attorney for Alexander Kendall, who's the administrator of the estate of B. Jan Modulesi. I'll address the issues in the same order as they were addressed to Ms. Terry with respect to the two appeals. I think the comments from the court correctly focus on the burden of proof here and the abuse of discretion standard. That seems to me to be the key issue. Ms. Terry is very critical of the judge because of some comments he made that she suggests mean that the judge didn't give proper attention and made his ruling based upon something not on the record. That's not what happened here. The record on appeal includes three separate transcripts. We were on the record on these two proof of claim matters for almost a full two and a half hours. One of the sessions was recessed because the judge had been interrupted in his preparation for one of the hearings. This is on the record. And it was recessed so that he would have more time to review the papers  This is a complicated case coming out of California. And all that you see in the record is rather than Judge Beasley not paying attention to the case was he kind of wished that he had allowed it to go back to the Marin Superior Court in the first instance. And that's all you see in the record. He questioned on specific issues. He addressed specific issues. To the extent Ms. Terry said he didn't give the case its due attention, I just think that's clearly not supported by the record. Your Honor, our papers include extensive lengthy specific allocation of what was done in the case. It was broken down in a whole number of ways. I did the principal declaration in support of the fees. And for each time period in the case, as it grew and went through its phases, I explained how the time had been spent on the illegality defense and where it came from. I had a unique perspective on it because I had litigated the exact same issue a few years before. And the determination of the illegality defense really turned on a single factual issue which was disputed at trial. It was actually disputed initially and then stipulated to. The rule is, Your Honor, that you cannot sell a piece of subdivided piece of land. The old Sundowner Casino consisted of three or four acres. The agreement involved the purchase of a portion of that. It violated the Subdivision Map Act under both California and Nevada law. That was it. The fact was stipulated to. So I thought, based upon my analysis of my 30 pages, I went through them again. I itemized it. I looked at the work done by my colleague, David Lonitch. I itemized that. The 10% is really fair. I think the principal problem here is that Ms. Teary didn't meet her burden. And her burden was to show specific facts, not general conclusions. Her initial argument at first session of the oral argument is 75% should be deducted. She thought about it, came back to the next argument, and said, You know what? Maybe it should be 50%. Neither of those general conclusions, speculations, guesstimates were supported by any documents. Yes, she did say, Well, I object to two hours here and three hours there. But in this case where 2,250 hours was spent, that didn't meet her burden proof. So there is a recent case, and I think Judge Brandon was on the panel, which goes over what the burden is in these kinds of cases. That case is and I sent a copy of it. I just found it yesterday. The case is called In Re Bartonwerfer. Forgive me if I mispronounced it. It's only a Westlaw citation right now. At 2020 Westlaw 2060307 and it specifically stated that in a case like this where the attorney's fees are at issue, the burden is the objection cannot be conclusory. It cannot be nonspecific. It cannot be general. That's what the objections were here. And I think Judge Beasley's decision is well supported by the record. The 10% deduction for the illegality defense was appropriate. And then the three other issues that Ms. Thierry raised all resulted in evidence that was material to the defendants prevailing at the trial. The first type of evidence she objected to was the preliminary hearing that took place with respect to an attorney named Dave Sante who had represented both litigants, both the plaintiff and the defendant pre-litigation. Mr. Sante objected to testifying as to his conversations with the Mountaineer side because he claimed an attorney-client privilege. Those communications were important. After a four-day hearing which mostly took place in the mornings, the judge ruled that there was no attorney- client who was able to inquire of Ms. Sante freely in the balance of the trial. And that evidence was instrumental to establishing the defense of novation. The second one is Your Honor, we had a hiatus in the case for about 30 days. It was a court trial. And during that hiatus, Mr. Modulesi, my principal witness, was arrested relating to matters that involved the case being litigated. There were big decisions that had to be made with respect to Mr. Modulesi's Fifth Amendment rights. We analyzed it. We evaluated it. We hired outside counsel. Ultimately, the decision was made that Mr. Modulesi could testify at the trial. He did testify. His testimony was instrumental to the defendants prevailing in the case. The third issue, I guess, is the allocation. I want to make sure I haven't missed one. There was one other objection that they asserted. We incurred 15 or 20 hours of time in connection with a writ of mandate proceeding. And what had happened is there had been a state court demur to the complaint as to the breach of fiduciary duty cause of action. Judge Chernus sustained that demur without leave to amend. There was a petition for writ of mandate. The time was spent opposing the petition. The petition was denied. That also benefited the case because we thereafter did not have to litigate the breach of fiduciary duty claim. I think the evidence well and substantially establishes each element of the ruling made by Judge Beasley. We think it's fair, and we think it fairly reflects the facts of the case. If there are no questions on this side, I'll turn to the Larson assignment issue. Larson assignment issue was quite troubling for me. I was representing Mr. Larson at the time. Mr. Scarpa went around my back and met directly with Mr. Larson and bought this claim. It's kind of interesting if we focus on what he bought. The assignment promised him two things. Number one, that he hadn't sold the rights to somebody else, whatever those rights are. Number two, Mr. Scarpa acknowledged the following, that the total value of the claims transferred were unknown and speculative. Mr. Scarpa could have received nothing and did receive nothing because it is undisputed in this Mr. Larson and Sundowner Towers never paid me. There is no evidence to the contrary, and my understanding is that's why this aspect of the case is entitled to de novo review. The cases that are relied on by Ms. Teary, none of them are like this case. None of the cases involve a situation where there are two parties on the prevailing side or two or more parties. One of the parties paid all the fees. The others did not. The non-payers are seeking to recover fees that were paid by the paying party. Your claim didn't pay all the fees. They paid about $600,000 of your fees. There's about $300,000 that haven't been paid yet. What do we do with those? The $300,000, and I'll give you the exact number in a moment, those were incurred by Kate Galston, the appellate attorney, and the Robinson firm who assisted in the bankruptcy. Neither of those attorneys represented Mr. Scarpa or Mr. Larson. The exact numbers on that is $286,752. That consists of... Counsel, is it your position then that there can't be under the theory that counsel for Mr. Scarpa has argued, there can't be any liability for those fees. Even if there is an argument about allocation based on payment, non-payment, they would never be liable for or obligated to pay those fees. That's exactly our argument. They never represented the parties. Just as a matter of... The appeal was filed on behalf of all of the defendants. I'm sorry? The appeal was filed and prosecuted on behalf of all of the defendants. That's correct, Your Honor. So why isn't it then that they weren't represented? Larson and Sundowner were parties to the appeal filed by you. I managed and drafted the appellate papers through the court of appeal level. At that point in time, Ms. Galston took over and she represented only the estate, Mr. Kendall, in the papers she filed. So her fees were only incurred on behalf of Mr. Kendall. She did not represent Mr. Larson. She did not represent Sundowner Towers, LLC. Okay. The cases that are relied upon by Ms. Thierry are not on point. I think that the TROPE case stands for a very simple position, which is you sign an agreement to pay fees, you owe fees, you're entitled to recover them. And the other cases cited are similar to those. And I think in the cases other than TROPE, Rosenauer, the key thing was that a party had prevailed and was legally entitled to attorney's fees. If the court didn't construct the rulings that it did, then the party that owed the attorney's fees, the obligor, would never have to pay them. In our case, it's different. In our case, Mr. Modulesi paid the fees, and to the extent he paid the fees, the obligation to pay fees was extinguished for all of the parties. And I think that's the key distinguishing factor here. One of the cases cited was the Macias case, and a party's union paid the fees. Well, if the court hadn't ordered the party to be entitled to recover the attorney's fees, the obligor would have gotten off scot-free. So it makes sense in those cases that the fees would be paid. In this case, there is a party to the action who paid the fees and is entitled to receive them. It just seems to me, Your Honors, that it's equitable, that it's fair, that it reflects economic reality. I didn't even ever bill Mr. Larson or Sundowner. My agreement as written in the document that's a part of the record was my relationship was with Bijan Modulesi. I had represented him for many years prior to this. And my agreement says while the rest of you will be jointly and severally liable, unless you tell me otherwise, I'm going to bill just Bijan Modulesi. I billed just Bijan Modulesi, and Bijan Modulesi was the only one who paid. But if he didn't pay you, you could have gone after the others for the fees, right? If he didn't pay me, but he did. And that's what distinguishes these other cases. He did actually pay the fees. So the other cases that you say are distinguished, the one is that the court required the union to pay the fees. Is that correct? The court did not require the union. The claim arose from union activities and I would assume based upon his union relationship. And that's the Masias case. The union voluntarily paid his fees. Right. What about the International Billing Services v. Emig case, 84 Calat 4th, 1175 from the year 2000? In that case, a group of engineers were sued by their former employer for breach of contract, and the engineers' fees were paid by their new employer. And they sought, after the engineers won a trial against their former employer, they sought the fees and the losing party argued, you don't get them because your new employer paid them. And the court rejected this argument. The court said, even though the engineers had not actually paid attorney's fees, the written retainer agreement made the engineers jointly and severally liable for the legal service rendered. So because the engineers became liable to pay the fee, even if they were not the source of the payment, they incurred the fees and were entitled to the award. I understand the facts of that and it goes exactly to the distinction I'm making. In that case, if the court would not have awarded the attorney's fees, the paying party, the party who lost the litigation, would have gotten off scot-free. That's not here in our case. In other words, unless it was paid, the party who owed the legal fees would never have had to have paid it. And the Masias case is exactly the same. So I understand why the court fashioned that remedy here. That's not what we have here. We have a party to the case who is entitled to be paid the fees and paid them. And so it seems to me that that's the fair and equitable result in these very different circumstances where there's a party who paid the fees as opposed to a non-party. The last point I wanted to make is that and I talked about it your honor, Galston's fees were $248,375 and the Robinson firm was $338,377.50 So if the court is, notwithstanding the arguments, inclined to enforce what Mr. Scarpa thought he got and which would be a windfall to him for $10,000 that he paid, that $286,752 should be carved out of any calculation. Thank you. All right. Thank you. I believe Judge Brandt has asked questions related to the point of my argument which is that ultimately both Glenn Larson and Sundowner were clients and pursuant to the engagement letter they were jointly and severally liable for the fees and the fees are awarded to prevailing parties, not to attorneys. And the option agreement states that the fees that are to be awarded are those that are incurred, not paid. But why should your client get money that someone else paid? Fair enough, your honor. I don't think there's any money to be paid. This is a claim against... It brings me to my question about why is the bankruptcy court deciding this issue in the first place? This is a debtor's and should be in state court, right? Fair enough. I think when we filed the proof of claim, your honor, we were just trying to preserve our rights. And your point is that this is really a dispute among prevailing parties and not a dispute with the debtor and the party who owes the fees. This is a dispute among prevailing parties. But to the extent that claim is very broadly defined in the code and I do practice bankruptcy law, I wanted to ensure that my client's right for an ultimate offset, if the bankruptcy court were to decide the issue of alter ego, which apparently it will now, that's been determined since this case went on appeal, I wanted to ensure that I protected my client's right for that right of setoff. And I didn't want the fact that no claim had been filed to bar his right for a setoff. That's really what that pertains to, your honor. Thank you. So that's ultimately, that's what my client is attempting to preserve is this right of setoff. And the case law we pointed out says that the standards incurred, not paid. And we're asking the court to find that there was legal error to the extent that the court found that payment was the critical issue and not the fact that the fees were incurred. Thank you. Okay, thank you very much. Matters submitted? Submitted. Thank you very much. Thank you for your good arguments. Interesting case. Thank you.
judges: Lafferty, Brand, Gan